# SUPREME COURT.

The People *ex rel.* J. J. Bradley agt. Thomas Stevens.

Brady, *J.* — The only embarrassment which I have felt in disposing of this proceeding, arises from the apparent conflict between the prevailing opinions delivered in the court of appeals, and the order directing a new trial.

These opinions refer to the act of 1842, and the ordinances passed by virtue of the authority conferred by it and seem to concede the existence of an office known as the president of the Croton aqueduct board prior to the adoption of the constitution of 1846. Nevertheless the act of 1867 under which the defendant claims, is declared constitutional and his right to the office unassailable.

The fact, however, that such an office existed prior to the adoption of the constitution of 1846, was not found by the justice who presided on the former trial and the relator having been advised of a decision adverse to him applied for an order changing the absolute judgment rendered against him to an order for a new trial, basing such application solely upon the allegation that if the opportunity were offered him he could prove the existence of the office he claims prior to the constitution of 1846; the order was granted. The opinions delivered in the court of appeals it must be assumed were before that court when the application referred to was made and either of two propositions must in my judgment be adopted in reference to that order namely : 1. That the fact referred to not having been established, the court had no right to consider the question which it would present; or, 2. That the judgment pronounced by the court, assuming

People *ex rel.* Bradley agt. Stevens.

the fact to have been proved, was erroneous and should be so modified as to leave the fact and question open.

If the application for the order directing a new trial had been general the conclusion would be justifiable, that the court had granted it upon the principle that the case was not one in which they assumed that no other facts could be proved which would change its legal aspect, but it was not.

It was predicated of the ability of the relator to prove the single fact stated, and the opposing affidavit of Mr. Marsh went at length into a consideration of the charge, that the question whether the existing office of president of the Croton aqueduct board mentioned in the complaint was or was not an office existing in substance and effect at the time of the adoption of the constitution of 1846, was specially argued before that court, on the hearing of the appeal, and submitted to the court by both sides, without objection from either.

Having arrived at this result, the decision of the court of appeals made upon the appeal herein, so far as it relates to the question which is presented or the additional fact found, becomes too uncertain to require from this tribunal such application of it herein as will defeat the relator's recovery, and more particularly so when it is considered that a general term of this court has pronounced its judgment in his favor. Assuming however that the decision of the general term is so affected by the determination made by the court of appeals, that it may not be regarded as a controlling authority, and looking at the question as *res nova*, I think the act of 1867 is in contravention of section 2, article 10 of the constitution. I rely upon the following adjudications to sustain that proposition: *The People* agt. *Draper* (15 *N. Y.*, 532); *Devoy* agt. *The Mayor* (36 *N. Y. Reports*, 494) ; *The People* agt. *Raymond* (37 *N. Y. Reports*, 428).

The act of 1842 (*Laws p.* 276) authorized the mayor aldermen and commonalty, to organize a department with full powers for the management of the Croton water-works and the distribution of the water, in addition to the authority con-

ferred to pass such by-laws and ordinances as to them should seem meet for the preservation and protection of all or any of the works connected with the supplying of the city of New York with pure and wholesome water; and the department and office of president thereof was created under such authority and continued until after the adoption of the constitution of 1846.

The fifteenth section of the act to amend the charter of the city of New York, passed in 1849 (*Laws* 1849, *p.* 282), is substantially a repetition of these provisions and the act of the legislature of the same year (*Laws* 1849, *p.* 537) is but a more formal and particular recital of the powers and duties involved and conferred. The president of the Croton aqueduct department was an officer within the authority given by the act of 1842, and having been designated by ordinance under that act the position was an office created by act of the legislature.

It was not destroyed by the act of 1849 or so changed by its provisions that its identity was lost. It continued and was recognized by that act and extended by it.

It is not enough to take a case out of the provisions of the constitution, that the names of offices existing when the constitution was adopted are afterwards changed by an act of the legislature, or that their functions are colorably modified (DENIO, *J.*, *in the People* agt. *Draper*, *supra*). And the enlargement or amplification of duties by act of the legislature relating to the same subject, imposed upon an office continued in purpose and by name, will not have such an effect within the principle of that case. It may be said in this case as said in *Devoy* agt. *The Mayor* (*supra*): "There has been however no substantial change either of official title or in the functions and duties of the office."

It is the same in general design, the same in general scope of authority and the same in its objects and relations as when ordained under the act of 1842 by the mayor, aldermen and

People *ex rel.* Bradley agt. Stevens.

commonalty; that it was and is a local office, does not seem to admit of a doubt.

The object of the legislation which bears upon the subject in connection with which the office was designated, and as a part of the machinery by which that object was to be consummated, was to supply the city of New York with water; and all the provisions of the acts passed conferring power were designed for that purpose.

The board created was local and its president was a local officer. The authorities referred to abundantly sustain the proposition that such an office cannot be controlled by such an act as that of 1867.

I have thus generally stated my views, but yet, I think with sufficient particularity to express the reasons which have influenced me and the conclusions at which I have arrived. I think the relator entitled to judgment.

Note.— It may be interesting to the profession to find out where the authority rests in this case as to the point of constitutional law decided in it. It would seem that the only mistake made in the case was in *granting a new trial.* The whole facts of the case seem to have been as fully presented and argued before the court of appeals as in the supreme court on either the first or second trials. The benefit to the relator, however, by granting a new trial is very apparent, as it gave to the court below a license to examine the whole question as *res nova,* and the very first plunge which the latter court made as a decision, was right in the teeth of the decision of the court of appeals upon the constitutional question, upon which the whole case rested.

As the court of appeals are not in the habit of considering their decisions overruled by the supreme court, however respectful, cogent and powerful the reasoning of the latter court may be, it will undoubtedly be safe practice to follow the decisions of the court of appeals until such times (if ever) they may see fit to change them. — [Rep.